**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

Allen G. Hutchens,                          )        No. CV-05-3580-PCT-DGC
                                            )
                Plaintiff,                  )
                                            )
vs.                                         )        **ORDER**
                                            )
Teresa Jean Hutchens, et al.,               )
                                            )
                Defendants.                 )
_____   )

Defendant Teresa Jean Hutchens and Defendants City of Kingman and Bryan Bredenkamp have filed motions for summary judgment. Dkt. ##94, 95. Plaintiff Allen Hutchens has filed a cross-motion for summary judgment. Dkt. #99. The Court has reviewed the memoranda submitted by the parties. Dkt. ##94, 95, 99, 102, 104. For the reasons stated below, the Court will grant Defendants' motions for summary judgment and deny Plaintiff's motion.[1]

**I.    Background.**

The facts are largely undisputed. On September 7, 2005, Defendant Hutchens called the City of Kingman Police Department and stated that she wanted to file a report regarding unwanted contacts at work. Dkt. #94-2, Ex. 1 at 94-95. Defendant Bryan Bredenkamp, a Kingman police officer, responded to Defendant Hutchens' request. *Id*., Ex. 2 at 17, 60.

---

[1]The request for oral argument is denied because the parties have thoroughly discussed the law and evidence and oral argument will not aid the Court's decision. *See Mahon v. Credit Bur. of Placer County, Inc.*, 171 F.3d 1197, 1200 (9th Cir. 1999).

1   Defendant Hutchens reported that she had been sued in federal court in Oregon by her

2   "crazy" uncle, Plaintiff Allen Hutchens. *Id*., Ex. 1 at 17-19; Dkt. #101, Ex. 11.  There is

3   some dispute over whether Defendant Hutchens, an attorney, was representing herself pro

4   se at this point in the Oregon litigation or whether she was still represented by counsel to

5   whom all of Plaintiff's contacts should have been directed. *See, e.g.*, Dkt. ##98; 104 at 4.

6   Defendant Hutchens told Defendant Bredenkamp that although the litigation was over,

7   Plaintiff was still contacting her at her place of work, the Mohave County Mediation Office.

8   Dkt. #94-2, Ex. 1 at 93-94.  The letters Plaintiff sent and phone calls he made were upsetting

9   to Defendant Hutchens and her coworkers, and her supervisor requested that she contact the

10  police.  *Id*.  Defendants Hutchens and Bredenkamp agreed that Defendant Bredenkamp

11  would call Plaintiff and warn him to stop contacting Defendant Hutchens or face possible

12  harassment charges.  *Id*., Ex. 1 at 96.

13      Later that day, Defendant Bredenkamp contacted Plaintiff by telephone at his Florida

14  home. *Id*., Ex. 2 at 62.  Defendant Bredenkamp states that he merely warned Plaintiff against

15  contacting Defendant Hutchens at her workplace and told him that further contact could

16  result in charges of harassment.  *Id*.  Plaintiff admits that it was his understanding that

17  Defendant Bredenkamp was calling to warn him against contacting Defendant Hutchens, and

18  that Defendant Bredenkamp did not state that he was planning to have Plaintiff arrested. Dkt.

19  #94-2, Ex. 4 at 98, 112.  Plaintiff claims, however, that Defendant Bredenkamp told him that

20  if Defendant Hutchens filed another complaint, Plaintiff would be arrested, extradited, and

21  sent to prison. *Id*. at 99.

22      During the call, Plaintiff requested that Defendant Bredenkamp serve him with a court

23  order requiring him to refrain from contacting Defendant Hutchens at her workplace. *Id*. at

24  99-100.  Defendant Bredenkamp advised Plaintiff that no court order would be served, and

25  that the phone call was simply a warning. Dkt. #94-2, Ex. 2 at 29-30, 62-63; Ex. 4 at 89-90.

26  When Plaintiff became argumentative, Defendant Bredenkamp ended the call.  *Id*., Ex. 2 at

27  30.  Virgilio Santana, who apparently helped Plaintiff around his house, testified that he

28  heard this telephone conversation and that Plaintiff was visibly upset, but that he does not

1   recall specifically what Defendant Bredenkamp told Plaintiff.  Dkt. #106, Ex. 3 at 26.

2   Defendant Bredenkamp and Plaintiff spoke again on September 26, 2005, when the

3   officer returned a phone call that Plaintiff had placed to him.  Plaintiff discussed with

4   Defendant Bredenkamp whether he could file a complaint against Defendant Hutchens for

5   filing a false police report.  *Id.*, Ex. 4 at 102-03.  Plaintiff stated that Defendant Hutchens had

6   lied when she told Defendant Bredenkamp the Oregon litigation was over.  *See* Dkt. #102

7   at 16-18. Defendant Bredenkamp told Plaintiff that he was quite sure Defendant Hutchens

8   would not face criminal charges.  *Id.*  This was the final time Defendant Bredenkamp spoke

9   with Plaintiff.  Defendant Bredenkamp testified that he did not know or believe that either

10  phone call would inflict fear on Plaintiff.  Dkt. #94-2, Ex. 2 at 33-34.  Plaintiff filed this

11  complaint on November 8, 2005.  Dkt. #1.[2]

12  **II.    Legal Standard.**

13          Summary judgment is appropriate if the evidence, viewed in the light most favorable

14  to the nonmoving party, "show[s] that there is no genuine issue as to any material fact and

15  that the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c); *see*

16  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).  "Only disputes over facts that might

17  affect the outcome of the suit . . . will properly preclude the entry of summary judgment."

18  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  The disputed evidence must be

19  "such that a reasonable jury could return a verdict for the nonmoving party."  *Id.* at 248.

20  / / /

21

22  [2]The parties disagree over other facts that are immaterial.  Much of Plaintiff's opposition

23  brief is comprised of digressive passages that contradict minor facts and assertions by
    Defendants. For example, Plaintiff explains in detail why he called Defendant Bredenkamp

24  by his first name (Dkt. #102 at 7-8), why Defendant Bredenkamp "knowingly lied" in stating

25  that he did not believe Plaintiff was using a speaker phone (*Id.* at 11-19), why he does not
    consider himself unemployed as alleged by Defendant Hutchens (Dkt. #104 at 12-14), and

26  why his conviction and imprisonment for firing a gun at his wife in a Shoney's restaurant

27  should not have caused Defendant Hutchens to fear him (*Id.* at 8-10).  The Court will
    consider only those disputed questions of fact that are material to a disposition on the

28  motions for summary judgment.

1    **III.    Discussion.**

2          **A.    Defendants City of Kingman and Bryan Bredenkamp.**

3                **1.    Negligence.**

4          To prevail on a negligence claim, a plaintiff must prove (1) that defendants owed a

5    duty to conform to a certain standard of care, (2) that defendants breached that standard, (3)

6    that defendants' conduct caused the resulting injury, and (4) that the plaintiff incurred actual

7    damages. *Gipson v. Kasey*, 150 P.3d 228, 230 (Ariz. 2007). The first element is a question

8    of law for the court to decide. *Id.* The second element – whether there has been a breach of

9    duty – "is an issue of fact that turns on the specifics of the individual case." *Id.* Summary

10   judgment may be granted, however, "if no reasonable juror could conclude that the standard

11   of care was breached." *Id.* n.1.

12         Arizona law broadly states that police officers "have a duty to act as would a

13   reasonably careful and prudent police [officer] in the same circumstances." *Austin v. City*

14   *of Scottsdale*, 684 P.2d 151, 153-54 (1984); *Newman v. Maricopa County*, 808 P.2d 1253,

15   1256 (Ariz. App. 1991). When responding to Defendant Hutchens' complaint and contacting

16   Plaintiff, Defendant Bredenkamp therefore had a duty to conduct himself as would a

17   reasonably careful and prudent police officer.

18         Defendants argue that they are entitled to summary judgment because Plaintiff has not

19   presented testimony of a police officer on whether Defendant Bredenkamp's actions

20   breached the standard of care of a reasonable police officer in his position. Dkt. #94 at 5.

21   Defendants claim that to prevail on a negligence claim against a defendant in a particular

22   profession, a plaintiff must present expert testimony by a member of that profession. *Id.*

23   Defendants are incorrect. In Arizona, the rule is merely that expert testimony "may be

24   required in those cases in which factual issues are outside the common understanding of

25   jurors." *Rossell v. Volkswagen of America*, 709 P.2d 517, 524 (Ariz. 1985). While

26   Defendants cite cases suggesting that expert testimony regarding the standard of care may

27   be necessary in the fields of air conditioning repair, civil engineering, and medicine (Dkt. #94

28   at 5), they cite no case suggesting that the standard of care for police officers is outside the

1  ken of jurors.  As Plaintiff argues, the jury could determine whether Defendant Bredenkamp

2  breached his duty without expert testimony.  *See, e.g.*, Dkt. #102 at 21-22.

3        In his complaint, Plaintiff alleges that Defendant Bredenkamp was negligent in several

4  ways:  (1) "by not asking to see the . . . letters Defendant [Hutchens] claimed w[ere] mailed

5  to her by Plaintiff," (2) "by not checking with the District Court in Oregon to verify that

6  Defendant[] [Hutchens'] story was true and the case had in fact ended," (3) by not asking

7  [Defendant Hutchens'] supervisor, if the supervisor did instruct the Defendant to phone the

8  police," (4) "[by phoning] the elderly Plaintiff, while knowing the Plaintiff was elderly and

9  venerable [sic], and wrongfully inform[ing] the Plaintiff that the Plaintiff would be arrested;

10  extradited and imprisoned (without due process) if the defendant Teresa Jean Hutchens ever

11  filed another harassment complaint against the Plaintiff," (5) "by conspiring with the

12  Defendant Teresa Jean Hutchens to use scare tactics and inflict fear and severe emotional

13  distress upon the elderly crippled Plaintiff," and (6) "[by not] check[ing] in any manner

14  whatsoever, contrary to basic common sense, and rather than making a simple phone call to

15  the United States District Court in Oregon and asking the question, "Has the civil case, Allen

16  Hutchens vs. Teresa Hutchens ended."  Dkt. #1 at 12.  These allegations essentially claim

17  that Defendant Bredenkamp was negligent in failing to investigate Defendant Hutchens'

18  claims more carefully and in threatening Plaintiff with arrest, extradition, and imprisonment.

19  *See, e.g.*, Dkt. ##1-4 at 12.

20        The Court must first determine whether Defendant Bredenkamp breached his duty by

21  failing to investigate the veracity of everything Defendant Hutchens told him.  The

22  undisputed facts show that Defendant Hutchens told Defendant Bredenkamp that the Oregon

23  litigation was over, that Plaintiff was "crazy," that Plaintiff had been contacting her at her

24  workplace, that her supervisor had requested that she file a police report, and that she hoped

25  Defendant Bredenkamp would call Plaintiff and ask him to leave her alone.  *See, e.g.*, Dkt.

26  #101, Ex. 11.  Had Defendant Bredenkamp investigated further, he may have discovered that

27  the Oregon litigation was not over.  (Defendant Hutchens was granted summary judgment

28  in the Oregon litigation on November 30, 2006.  Dkt. #101, Ex. 1.)  He may have formed a

1   belief that Plaintiff had a right to contact Defendant Hutchens for purposes relating to the

2   Oregon litigation. But further investigation would not have changed the undisputed facts that

3   Plaintiff was making repetitive phone calls and sending letters to Defendant Hutchens at her

4   workplace, in a manner perceived as harassing and distracting to Defendant Hutchens and

5   her co-workers.  In the face of such repeated and apparently harassing conduct, Defendant

6   Bredenkamp acted reasonably and prudently in choosing to call Plaintiff rather than launch

7   an investigation.  Defendant Bredenkamp did not breach his duty to act as a reasonably

8   careful and prudent police officer under the circumstances.

9       The Court must also determine if Defendant Bredenkamp breached his duty during

10  his conversation with Plaintiff.  Although Plaintiff testified, and the Court must accept as

11  true, that Defendant Bredenkamp told him he would be extradited, arrested, and placed in

12  prison if Defendant Hutchens filed another complaint, it is clear from Plaintiff's own

13  testimony that Plaintiff interpreted Defendant Bredenkamp's call as merely a warning.

14  Plaintiff testified during his deposition that he understood Defendant Bredenkamp was

15  calling simply to request that he stop harassing Defendant Hutchens and to warn him that

16  future unwelcome contact could result in criminal charges of harassment.  Plaintiff further

17  testified that he knew Defendant Bredenkamp was not going to arrest him, and that he

18  believed Defendant Bredenkamp's phone call was based on the officer's true belief of

19  Plaintiff's conduct toward Defendant Hutchens.[3] Plaintiff even told Defendant Bredenkamp

20  in a second phone conversation that he would have responded to Defendant Hutchens' report

21  in precisely the same manner.  *See* Dkt. #102 at 15-16.

22

---

23  [3]In his opposition to Defendants' motion, Plaintiff asserts that the testimony admitting that
24  he did not believe Defendant Bredenkamp was going to arrest him, but was merely issuing
    a warning, is fabricated.  Dkt. #102 at 7.  Plaintiff does not explain the basis for this bold
25  assertion.  Plaintiff does state in an affidavit that during his deposition he "was incoherent
    to the point that [the attorneys] both laughed at some of [his] questions and answers, and . . .
26  even asked [him] if [he] could read."  Dkt. #99 at 22.  In the same affidavit and attached
27  letter, however, he states that he has no objection to Defendants using his deposition
    testimony in any lawful manner.  *Id*.  The Court has reviewed Plaintiff's deposition and finds
28  no basis to believe that any portion of it is fabricated.

1    While Plaintiff alleges there was a conspiracy between Defendants to inflict emotional

2    distress (Dkt. #1 at 12), he has absolutely no evidence of a plan between Defendants

3    Hutchens and Bredenkamp, and Defendant Hutchens testified that no such plan existed.

4    Dkt. #98, T. Hutchens Depo.  In addition, although Virgilio Santana testified that Plaintiff

5    appeared disturbed by the contact from Defendant Bredenkamp, he also stated that he could

6    not recall specifically what Defendant Bredenkamp said.  *See, e.g.*, Dkt. #106, Ex. 3 at 26.

7    Because Plaintiff's own testimony corroborates Defendant Bredenkamp's assertion

8    that he merely issued a warning to Plaintiff, the Court finds that Plaintiff has produced no

9    evidence from which a reasonable jury could conclude that Defendant Bredenkamp breached

10   his duty to act as a reasonable police officer under the circumstances.

11   In addition to this holding, the Court concludes that Plaintiff has produced no

12   evidence of actual damages.  The only negligence damages he alleges are various types of

13   emotional distress.  Dkt. #1-4 at 13.  Under Arizona law, however, a plaintiff may recover

14   for negligent infliction of emotional distress only if "the shock or mental anguish of the

15   plaintiff [is] manifested as a physical injury.  Damages for emotional disturbance alone are

16   too speculative."  *Keck v. Jackson*, 593 P.2d 668, 669 (Ariz. 1979).  Plaintiff repeatedly

17   states that he is elderly, crippled, and ill (Dkt. #102 at 3, 7, 9, 10, 19, 20, 21), but he has not

18   alleged that any of these physical ailments occurred as a result of Defendant Bredenkamp's

19   conduct.  In fact, he specifically states that Defendant Bredenkamp's conduct resulted only

20   in "severe and lasting *emotional* distress[.]" *Id*. at 10 (emphasis added).  Plaintiff has not

21   shown that he experienced other actual damages that are recoverable in negligence actions

22   in Arizona, such as physical harm, *Felder v. Physiotherapy Assocs.*, 158 P.3d 877, 889 (Ariz.

23   App. 2007); greater susceptibility to illness or a decreased physical ability, *Destories v. City*

24   *of Phoenix*, 744 P.2d 705, 709 (Ariz. App. 1987); or pecuniary damages, *Standard Chartered*

25   *PLC v. Price Waterhouse*, 945 P.2d 317, 345 (Ariz. App. 1996).

26   Because the Court will grant summary judgment on Plaintiff's negligence claim

27   against Defendant Bredenkamp, the Court will also grant summary judgment to Defendant

28   City of Kingman, whose alleged liability is based solely on a theory of respondeat superior.

1   *See Hernandez v. Maricopa County*, 673 P.2d 341, 343 (Ariz. App. 1983).

2   **2.    Intentional Infliction of Emotional Distress.**

3       To recover for intentional infliction of emotional distress ("IIED"), a plaintiff must

4   prove that (1) the defendant's conduct was extreme and outrageous, (2) the defendant either

5   intended to cause emotional distress or recklessly disregarded the near certainty that distress

6   would result from the conduct, and (3) the conduct caused the plaintiff severe emotional

7   distress.  *See Lucchesi v. Stimmell*, 716 P.2d 1013, 1015-16 (Ariz. 1986) (citing *Watts v.*

8   *Golden Age Nursing Home*, 619 P.2d 1032, 1035 (Ariz. 1980)).

9       Under the first element, a plaintiff "may recover for [IIED] only where the

10  defendant's acts are 'so outrageous in character and so extreme in degree, as to go beyond

11  all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a

12  civilized community.'"  *Patton v. First Fed. Sav. & Loan Ass'n of Phoenix*, 578 P.2d 152,

13  155 (Ariz. 1978) (quoting *Cluff v. Farmers Ins. Exch.*, 460 P.2d 666, 668 (Ariz. 1969)).  It

14  is not enough "that the defendant has acted with an intent which is tortious or even criminal,

15  or that he has intended to inflict emotional distress, or even that his conduct has been

16  characterized by 'malice,' or a degree of aggravation which would entitle the plaintiff to

17  punitive damages for another tort."  Restatement (Second) of Torts, § 46 cmt. d (1965).

18      No reasonable jury could find that Defendant Bredenkamp's actions were so

19  outrageous or extreme as to be utterly intolerable.  He received a complaint from Defendant

20  Hutchens that Plaintiff was harassing her.  He called Plaintiff at his home in Florida and

21  warned him to stop contacting Defendant Hutchens.  Defendant Bredenkamp believed

22  Defendant Hutchens' reports of harassment to be true.  Defendant Bredenkamp's conduct in

23  attempting to act on these reports does not come close to the outrageous and extreme conduct

24  required for IIED claims.

25       Further, Defendant Bredenkamp testified that he did not believe that he would invoke

26  fear in Plaintiff, and Plaintiff has not contradicted this testimony. Dkt. #94-2, Ex. 2 at 33-34.

27  In fact, Plaintiff has testified that he interpreted Defendant Bredenkamp's call as only a

28  warning. *Id*., Ex. 4 at 97-98, 112.  When Plaintiff called Defendant Bredenkamp after their

1   first phone conversation, he told Defendant Bredenkamp that he understood Defendant
2   Bredenkamp's position and that Defendant Bredenkamp must have believed Defendant
3   Hutchens was telling the truth. *Id*. at 103. Plaintiff has produced no evidence that Defendant
4   Bredenkamp either intended to cause or recklessly disregarded the near certainty that his
5   conduct would cause Plaintiff severe emotional distress.  The Court will therefore grant
6   summary judgment to Defendant Bredenkamp on Plaintiff's IIED claim.

7       Because the Court will grant summary judgment to Defendant Bredenkamp on
8   Plaintiff's IIED claim, the Court will also grant summary judgment to Defendant City of
9   Kingman, whose liability is based solely on a theory of respondeat superior. *See Hernandez*,
10  673 P.2d at 343.

11      **B.     Defendant Hutchens.**

12          **1.     Abuse of Process.**

13      Defendant Hutchens argues that Plaintiff is collaterally estopped from bringing an
14  abuse of process or IIED claim because of a temporary restraining order issued by a federal
15  court in Oregon that precluded Plaintiff from contacting Defendant Hutchens "for any reason
16  whatsoever." Dkt. #97 at 3.  This argument fails for two reasons.  First, there is no evidence
17  that the temporary restraining order lasted long enough to preclude Plaintiff from contacting
18  Defendant Hutchens in Arizona.  Second, the issue of whether Plaintiff was or was not
19  allowed to contact Defendant Hutchens is not the same issue as whether Defendant Hutchens
20  committed abuse of process, defamation, or IIED. Collateral estoppel does not apply because
21  "the issue at stake [is not] identical to the one alleged in the prior litigation." *See Town of*
22  *Bonneville v. Calloway*, 10 F.3d 1505, 1508 (9th Cir. 1993).   Contrary to Defendant
23  Hutchens' assertion, Plaintiff is not trying to relitigate whether he had a right to contact
24  Defendant.

25      To prevail on an abuse of process claim, a plaintiff must show that a defendant
26  committed (1) a willful act in the use of judicial process (2) for an ulterior and primary
27  purpose not proper in the regular conduct of the proceedings. *Niendstedt v. Wetzel*, 651 P.2d
28  876, 881 (Ariz. App. 1982).  Arizona courts, following authority from other jurisdictions,

1    have defined the first part of the test as "encompassing the entire range of court procedures

2    incident to the litigation process." *Id.*; *see also Gray v. Kohlase*, 502 P.2d 169, 173 (Ariz.

3    App. 1973) (granting summary judgment when "defendants took no action pursuant to

4    authority of court, directly or by ancillary proceedings, [and] no judicial process was

5    abused").  "Thus, the essence of the tort 'abuse of process' lies in the misuse of the power

6    of the court; it is an act done in the name of the court and under its authority for the purpose

7    of perpetrating an injustice." *Gray*, 502 P.2d at 173 (quoting *Meadows v. Bakersfield Sav.*

8    *& Loan Ass'n*, 59 Cal.Rptr. 34, 37 (1967)).

9           Defendant Hutchens did not use the judicial process when she filed a report with

10   Defendant Bredenkamp.  The police report was not part of the Oregon litigation, which was

11   the only ongoing litigation between Plaintiff and Defendant Hutchens.  The police report was

12   entirely removed from the judicial process.  Even if Defendant Hutchens lied to Defendant

13   Bredenkamp, an abuse of process claim does not provide the means to remedy such deceit.

14   Because Plaintiff cannot satisfy the first element of a claim for abuse of process, the Court

15   will grant summary judgment to Defendant Hutchens on this claim.

16                        **2.    Defamation.**

17          Defendant Hutchens correctly argues that any statements she made to Defendant

18   Bredenkamp were absolutely privileged.  Dkt. #97 at 8-9.  Arizona recognizes an absolute

19   privilege for formal and informal statements or complaints made to police officers.  *See*

20   *Ledvina v. Cerasani*, 146 P.3d 70, 74 (Ariz. App. 2006).  While Plaintiff cites cases that he

21   alleges contradict Defendant's argument, these cases deal with qualified, not absolute

22   privilege.  Dkt. #104 at 20 (citing, e.g., *Green Acres Trust v. London*, 688 P.2d 617, 624

23   (Ariz. 1984)).  An absolute privilege for statements made to police furthers the sound public

24   policy of protecting speech in "those situations where the public interest is so vital and

25   apparent that it mandates complete freedom of expression without inquiry into a defendant's

26   motives." *Ledvina*, 146 P.3d at 72 (citing *Sobol v. Alarcon*, 131 P.3d 487, 490 (Ariz. App.

27   2006)).  Because all of Defendant Hutchens' allegedly defamatory statements were made

28   during the course of her report to Defendant Bredenkamp, the Court will grant summary

1    judgment to Defendant Hutchens on Plaintiff's defamation claim.

2                    **3.     Intentional Infliction of Emotional Distress.**

3             Defendant Hutchens' actions were not so extreme and outrageous as to satisfy the first

4    element of the claim for IIED.  Much of Plaintiff's opposition is dedicated to showing that

5    Defendant Hutchens either had no grounds to believe that Plaintiff lacked the right to contact

6    her or, alternatively, no grounds to feel harassed or threatened by Plaintiff.  Dkt. #104 at 5-

7    10.  Even if Defendant Hutchens knew that Plaintiff might have a right to contact her, the

8    filing of a police report to stop distracting conduct she considered harassment – contact from

9    Plaintiff at her place of work – is not sufficiently extreme and outrageous to make out a claim

10   for IIED under Arizona law.  *See Patton*, 578 P.2d at 155.

11            In addition, Plaintiff has produced no evidence that Defendant Hutchens intended to

12   cause Plaintiff distress or recklessly disregarded the near certainty that severe distress would

13   occur.  While Plaintiff argues that he had a right to contact Defendant Hutchens because she

14   was representing herself in the Oregon litigation (Dkt. #104 at 4), no reasonable jury could

15   find that Defendant Hutchens' attempt to stop workplace contact from Plaintiff was intended

16   to cause him severe emotional distress.  Rather, the evidence leads only to the conclusion that

17   Defendant Hutchens wanted Plaintiff to stop contacting her.  In addition, although Plaintiff

18   repeatedly accuses Defendant Hutchens of lying to police (*see, e.g.*, Dkt. #104 at 11-12),

19   such bare accusations do not suffice to demonstrate a question of fact regarding Defendant

20   Hutchens' intent.

21                             **4.     Punitive Damages.**

22            Punitive damages are not permitted when no underlying tort has been committed.

23   *Quiroga v. Allstate Ins. Co.*, 726 P.2d 224, 226 (Ariz. App. 1986).  The Court will grant

24   summary judgment to Defendants on Plaintiff's request for punitive damages.

25            **IT IS ORDERED:**

26            1.      Defendants City of Kingman and Bryan Bredenkamp's motion for summary

27                    judgment (Dkt. #94) is **granted**.

28            2.      Defendant Teresa Jean Hutchens' motion for summary judgment (Dkt. #95)

is **granted**.

3.      Plaintiff Allen G. Hutchens' motion for summary judgment (Dkt. #99) is

**denied**.

4.      The Clerk of the Court is directed to **terminate** this action.

DATED this 10th day of August, 2007.


_____

David G. Campbell
United States District Judge